**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **O.T., A.T-1., J.T., and A.T-2.**

**No. 20-1036** (Randolph County 2018-JA-063, 2018-JA-064, 2018-JA-065, and 2018-JA-066)

**MEMORANDUM DECISION**

Petitioner Mother J.K., by counsel Morris C. Davis, appeals the Circuit Court of Randolph County's November 30, 2020, order terminating her parental rights to O.T., A.T-1., J.T., and A.T-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner's drug abuse led to her failure to properly supervise and care for the children resulting in the neglect of their emotional, medical, and hygienic needs. Specifically, the DHHR alleged that petitioner tested positive for methamphetamine, buprenorphine, and benzodiazepines during a drug screen required as a condition of her sentence of home incarceration, which was imposed in 2015 following her felony third-offense shoplifting conviction. Petitioner had also failed to comply with the requirement that she wear an ankle monitoring device and was reincarcerated for these violations. Further, the DHHR alleged that petitioner admitted to her probation officer that she used the illicit substances named above. The children's maternal aunt reported to the DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two children share the same initials, we refer to them as A.T.-1 and A.T.-2, respectively, throughout this memorandum decision.

worker that then-seven-year-old O.T. described giving petitioner O.T.'s drug-free urine to use for a drug screen because she was promised an electronic tablet in return. The maternal aunt also reported finding petitioner upstairs in her bedroom with a glass pipe and cleaning up a powder, while then-three-year-old J.T. wore a soiled diaper and needed medical care. When questioned by the DHHR worker, petitioner admitted to asking O.T. for her urine so she could use it for drug screening. Petitioner reported having a drug addiction since she was fourteen years old, and she told the worker that she has never completed a drug rehabilitation program but completed a drug court program two years prior. Finally, the DHHR reported that the parents were the subjects of an abuse and neglect petition in 2015, but they completed the requisite improvement period and were reunified with the children. However, in 2016, circumstances again required Child Protective Services ("CPS") involvement. The DHHR thus concluded that the family has "demonstrated the same patterns of poor decision making and demonstrates a lack of protecting, as identified in previous CPS investigations." Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in July of 2018, wherein petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period upon her release from incarceration, which the court granted on November 19, 2018. The terms of the improvement period included requirements that she do the following: maintain sobriety, submit to drug screens, complete drug treatment, attend couples counseling, complete adult life skills and parenting sessions, and participate in supervised visitations. Thereafter, the circuit court held a series of status hearings and continued petitioner's improvement period, finding that she had been compliant. In June of 2019, the circuit court held a status hearing and petitioner failed to appear, but counsel represented her. The DHHR reported that petitioner had relapsed in her drug abuse and was no longer compliant with the terms and conditions of her improvement period. Accordingly, the circuit court terminated petitioner's post-adjudicatory improvement period.

The circuit court held a hearing in July of 2019 and took evidence regarding whether to grant petitioner a post-dispositional improvement period. The DHHR worker testified that petitioner had not been truthful with the multidisciplinary team ("MDT") members, which impeded the DHHR's efforts of reunification. Petitioner testified that she was enrolled in a twenty-eight-day substance abuse treatment program and was going to enroll into outpatient drug treatment upon discharge. She explained that she relapsed in her drug addiction in April of 2019. On cross-examination, she admitted to submitting to one drug screen between April 9, 2019 and July 25, 2019, and that she tested positive for methamphetamine, buprenorphine, fentanyl, and benzodiazepine for that one screen. After first stating that she randomly ran into the children in public, petitioner admitted to arranging unauthorized contact with the children at her house, the relative's house, a store, and at parks. A probation officer testified that in October of 2018, petitioner forged a drug screen result in order to obtain visitation with the children. She also stated that petitioner falsified drug screen results in March of 2019, as evidenced by urine samples being returned with negative drug results but petitioner's blood samples returning positive for methamphetamine and benzodiazepine. The circuit court held all rulings in abeyance because the permanency plan for the children needed to be adjusted in light of the relative foster placements' violation of the visitation rules. The circuit court noted that petitioner appeared to treat the entire proceeding as a game.

In January of 2020, the circuit court held a status hearing wherein petitioner moved again for a post-dispositional improvement period. The circuit court denied the motion upon finding that petitioner had not carried her burden of proving that she was entitled to such. A dispositional hearing was set for February of 2020 but was continued due to petitioner giving birth to twins.[2] In September of 2020, the guardian submitted a report recommending the termination of petitioner's parental rights, asserting that petitioner lied to the MDT, cheated and skipped drug screens, exercised unauthorized visitations with the children while they were placed with relatives, and gave birth to drug-exposed twins who did not survive to be discharged from the hospital. The same month, the circuit court appointed a new guardian upon petitioner's request, citing a conflict of prior representation. The newly appointed guardian also filed a report recommending the termination of petitioner's parental rights.

In October and November of 2020, the circuit court held dispositional hearings. The DHHR argued in favor of its previously filed motion to terminate petitioner's parental rights. The circuit court took judicial notice of the evidence produced at the July of 2019 hearing. Due to time constraints, the circuit court continued the hearing. At the November hearing, the DHHR presented evidence that petitioner inconsistently submitted to drug screens with one screen submitted in September of 2020 showing she was positive for methamphetamine and a few drug screens in October of 2020, one of which showed she was positive for methamphetamine. Petitioner testified that she enrolled in an outpatient drug treatment program in August of 2020 that required counseling once a week. She also denied using methamphetamine and blamed a medication for the false positives. Petitioner explained that she had not seen her children since April of 2019, due to her inconsistent drug screening. Ultimately, the circuit court concluded that termination of petitioner's parental rights was in the children's best interest and necessary for their welfare and further found that petitioner was unable or unwilling to provide adequately for the children. The circuit court's November 30, 2020, dispositional order reflected this termination.[3] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2] The twins unfortunately were stillborn or died shortly after their births. Therefore, they were not the subject of the underlying proceedings or at issue on appeal.

[3] The father's parental rights were terminated below. The permanency plan for all four children is adoption by the same foster family.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. In support, petitioner avers that her testimony at the July of 2019 hearing showed that she was likely to participate in another improvement period and that her circumstances had changed since the granting of her post-adjudicatory improvement period. Specifically, petitioner testified that she was enrolled into a twenty-eight-day drug treatment program, attended drug counseling, and planned to continue her drug treatment. At the November of 2020 hearing, petitioner stated that she was actively participating in an opioid withdrawal clinic. Petitioner argues that a positive change in her circumstances is apparent. We disagree.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Further, because petitioner was granted a prior improvement period, she was required to show that she "experienced a substantial change in circumstances" and that due to the change in circumstances, she was likely to fully participate in a second improvement period. W. Va. Code § 49-4-610(3)(D). It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

It is clear from the record that petitioner was not likely to fully participate in a post-dispositional improvement period based on her performance in her post-adjudicatory improvement period and that her circumstances were unchanged. Petitioner fails to address her pattern of disobeying the court's orders and general dishonesty during the proceedings below. The record shows that petitioner forged a drug screen document to show a negative test result so that she could exercise visitation with the children. Further, petitioner admitted to lying under oath regarding her part in arranging unauthorized visits with the maternal aunt. Additionally, the DHHR put forward evidence that petitioner's urine screens showed negative results, but subsequent blood tests showed positive results for methamphetamine and other illicit substances, implying that petitioner was manipulating the urine drug screens. Bearing in mind that petitioner admitted that she asked then-seven-year-old O.T. for drug-free urine and that she continued to make misrepresentation to the court and the MDT members, the circuit court did not find petitioner's testimony of her intent to remain in drug treatment to be credible. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court found that this dishonesty was a barrier to petitioner's ultimate success and noted that petitioner treated the entire proceeding as a game. Accordingly, we find no error in the circuit court's denial of her motion.

Petitioner also argues that the circuit court erred in terminating her parental rights when it delayed ruling upon the final disposition for "one year three months and eleven days." Petitioner asserts that the circuit court failed to comply with the Rules of Child Abuse and Neglect Proceedings regarding timelines for disposition. Here, the circuit court clearly did not comply with

Rule 32(a), which provides that the "disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va. Code § 49-4-610(2) and then no later than thirty (30) days after the end of the improvement period." Below, the circuit court's final dispositional hearing was held in November of 2020, nearly sixteen months after the termination of petitioner's post-adjudicatory improvement period in June of 2019.

However, notably absent from this argument is an assertion that the circuit court's delay prejudiced petitioner in any way. Indeed, petitioner continued to receive numerous services from the DHHR including the ability to submit to drug screens. Nevertheless, petitioner failed to take full advantage of the extra time created by the delay by maintaining sobriety and reestablishing supervised visits with the children. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Given petitioner's failure to assert any prejudice resulting from the delayed final disposition, we cannot find that the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes were substantially disregarded or frustrated such that vacation of the order is warranted. Accordingly, we find that petitioner is entitled to no relief in this regard.

Furthermore, we recently addressed the failure of circuit courts to adhere to statutory requirements and deadlines in abuse and neglect matters.

> The procedural and substantive requirements of West Virginia Code § 49-4-601 *et seq.*, the Rules of Procedure for Child Abuse and Neglect [Proceedings], and our extensive body of caselaw are not mere guidelines. The requirements contained therein are not simply window dressing for orders which substantively fail to reach the issues and detail the findings and conclusions necessary to substantiate a court's actions. The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority.

*State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 520, 845 S.E.2d 290, 295 (2020). We caution the circuit court that "'[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.' Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991)." Syl. Pt. 4, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 30, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton